CALEB H. CAMFIELD, plaintiff in error, vs. WM. J. PATTERSON, defendant in error.

1. In *habeas corpus*, where the applicant alleges imprisonment by the defendant, under a specified claim of authority and an exemption in law, by reason of certain stated facts; and the respondent asserts the authority, and admitting the facts stated, denies the legal exemption set up, there arises a simple issue of law, which must be tried upon the case made; and no facts *dehors* the record can be legally considered.
2. Under the enrolling acts of the Congress of the Confederate States, an individual, whose liability to military service is once fixed, cannot evade it by voluntarily engaging in a new employment, which, by the Exemption Act, would exempt one *bona fide* pursuing it.

*Habeas Corpus*, from Decatur Superior Court. Decided by Judge R. H. CLARK, at April Term, 1863.

The question presented by the record in this case arises out of the following statement of facts, to-wit: William J. Patterson, a resident citizen of Decatur county, Ga., aged thirty-eight years, entered upon the duties of overseer for Mrs. Sarah J. Martin, a *feme sole*, under a regular contract, on the 1st day of December, 1862, on the plantation of the said *feme sole*, in Decatur county. As such overseer, he had the care and management of thirty-five negro slaves on the plantation, fifteen of which were over sixteen years of age. There was no other white person on the plantation except Mrs. Martin and some small children. The plantation was cultivated in corn, provisions, and such other things as are usually produced on farms in the country. While thus employed, Patterson was arrested by Captain Camfield, enrolling officer, under the Conscription Act of the Congress of the Confederate States, and held as a conscript under said Act. Patterson presented his petition for a *habeas corpus*, alleging that, under the facts aforesaid, he was exempt from conscription, and that his imprisonment was, therefore, illegal.

Upon hearing the *habeas corpus* and return thereto, the presiding Judge discharged Patterson from arrest.

This decision is the error alleged.

VOL. XXXIII—36.

Camfield *vs.* Patterson.

MORGAN, for plaintiff in error.

No appearance for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

This case, as presented by the record, is somewhat peculiar. The applicant for the writ of *habeas corpus,* in his petition, alleges that the defendant, claiming to be an enrolling officer of the Confederate States, had arrested him, as a conscript, subject to military duty, under the Act of Congress approved 16th April, 1862, and further, that he was not so subject, for that on the 1st day of December, 1862, he became, and ever since has been, the overseer of a *feme sole,* on a plantation whereon are more than twenty slaves, and no white person, other than said *feme sole,* her small children, and the petitioner ; which facts entitle him to exemption, under the Act of Congress exempting certain persons therein described from military duty.    The defendant responds that, as assistant enrolling officer, he did arrest the applicant, and holds him in custody as a conscript ; that at the time of the passage of .the Act of 16th April, 1862, and the call of the President under it, the applicant was a merchant in the town of Bainbridge. and entered into the employment of a *feme sole,* as overseer, after the call, and after the passage of the Exemption Act, thereby seeking to secure to himself exemption after his liability to military service had become fixed, by changing his occupation ; which he alleges is inadmissible.    These are the pleadings which make the case presented to the Court below.

A paper signed by the counsel for the parties, purporting to be an agreed statement of facts, submitted to the Judge below, appears in the transcript of the record, but is not noticed in the bill of exceptions, where alone it could legitimately have place.    It was neither distinctly referred to in the opinion of the Court below, nor in the argument of counsel, here, nor has it been objected to as being irregularly before us.    It is of little importance, in any view, save as indicating

the facts upon which, alone, the case was submitted.   Those facts, viz : the liability of the applicant, upon the call of the President, to enrollment for military service, and that continuing for months, until the 1st day of December, 1862, when he voluntarily engaged in an employment which, under the Exemption Act passed on the 11th October, 1862, exempted him from military service ; and his arrest as a conscript, liable for duty, but not performing it, appear in the petition and answer, and are recited in the bill of exceptions.

It is thus made apparent to us, that the applicant relied for his discharge from custody *solely* upon his exemption by reason of his employment as overseer, etc.   This is the case distinctly made in his petition, and this is the case met by the respondent.

The Court below placed the judgment discharging the petitioner upon two grounds : " 1st, that the Conscript Acts do not authorize the arrest of the conscript until he shall have been enrolled and willfully refuses to obey, which does not appear to have been done in this case ; and, 2d, because it appears to have been the practice of the conscript officers of the Government to recognize this employment, though entered into subsequent to the date of the Conscript Acts, and before enrollment, as a good cause of exemption."

1. How the question embraced within the first ground came up for examination, we do not at all understand.   Had the applicant simply alleged that he was illegally held in custody by defendant, and prayed that the writ of *habeas corpus* issue, that the cause of his detention might be inquired into, and had it appeared by the return to the writ, or by that and *aliunde* proof, that the defendant had arrested the applicant as subject to conscription, without previous enrollment of him, then that fact would have been within the range of judicial inquiry.   But he adopted a different course.   He alleged his arrest as one subject to conscription, for military service, and his exemption by reason of his employment—nothing more ; and to nothing more need the defendant address his answer.   There is no complaint that he had been arrested without previous enrollment.   Then, why

should the defendant reply, or show, previous enrollment? We think the judgment of the Court, in so far as it rested upon the first ground, was *dehors* the record, based upon the absence of evidence not required by the issue, and therefore erroneous.

2. The judgment of the Court, in the second ground, is predicated upon "the practice of the conscript officers of the Government, recognizing the employment of the applicant, though entered into subsequent to the date of the Conscript Act, and before enrollment, as a good cause of exemption." We inquire, 1st, how was such practice established—how many conscript officers concurred in establishing it—how many acts of each indicated his concurrence? 2d, where is the evidence that any conscript officer, in a single instance, recognized such exemption, in the case put? We find no such evidence, either in the record or in the bill of exceptions. 3d, we inquire would such recognition, in a few instances, without the sanction or cognizance of the Department, if erroneous, bind the Department or any judical officer. The defendant, in this case, certainly does not recognize it. He distinctly takes the position, that the voluntary assumption of *any* employment, (not previously pursued,) after the liability had become fixed, would not entitle the party to exemption; and in this we think he is well fortified.

We do not say no change of circumstances, after the liability had occurred, and before enrollment, if occasioned by the act of God, or of the Confederate Government, or by events beyond the control of the party, would entitle him to exemption. But this is a case of one *voluntarily* seeking exemption, by contract, for personal employment, after liability fixed.

For these reasons, we think there is error in the second ground upon which the judgment of the Court below is placed, and reverse that judgment.

Let the judgment be reversed.